1   William R. Urga, (Bar No. 1195)
    WRU@juww.com
2   JOLLEY URGA WIRTH WOODBURY & STANDISH
    3800 Howard Hughes Parkway, 16th Floor
3   Las Vegas, NV 89169
    Telephone:  (702) 699-7500
4   Facsimile:  (702) 699-7555

5   Ronald L. Olson*
    Ronald.Olson@mto.com
6   Mark B. Helm*
    Mark.Helm@mto.com
7   Jeffrey Y. Wu*
    Jeffrey.Wu@mto.com
8   MUNGER, TOLLES & OLSON LLP
    355 South Grand Avenue
9   Thirty-Fifth Floor
    Los Angeles, CA   90071-1560
10  Telephone:    (213) 683-9100
    Facsimile:    (213) 687-3702
11  *admitted pro hac vice

12  Attorneys for Counterdefendant, Counterclaimant and
    Crossclaimant
13  ELAINE P. WYNN

14              UNITED STATES DISTRICT COURT

15                  DISTRICT OF NEVADA

16

17  WYNN RESORTS, LIMITED, a Nevada         CASE NO.  2:12-CV-00400-LRH-PAL
    Corporation,
18
                  Plaintiffs,
19                                          ANSWER OF ELAINE P. WYNN TO
         vs.                                ARUZE AND UNIVERSAL'S FIRST
20                                          AMENDED COUNTERCLAIM;
    KAZUO OKADA, an individual, ARUZE       COUNTERCLAIM AND CROSSCLAIM OF
21  USA, Inc., a Nevada corporation,        ELAINE P. WYNN
    UNIVERSAL ENTERTAINMENT
22  CORPORATION, a Japanese corporation,

23               Defendants.

24  _____     JURY DEMAND
    ARUZE USA, INC., a Nevada corporation,
25  UNIVERSAL ENTERTAINMENT
    CORPORATION, a Japanese corporation,
26
                  Counterclaimants,
27
         vs.
28

1   WYNN RESORTS, LIMITED, a Nevada
    Corporation, STEPHEN A. WYNN, an
2   individual, KIMMARIE SINATRA, an
    individual, LINDA CHEN, an individual,
3   RAY R. IRANI, an individual, RUSSELL
    GOLDSMITH, an individual, ROBERT J.
4   MILLER, an individual, JOHN A. MORAN,
    an individual, MARC D. SCHORR, an
5   individual, ALVIN V. SHOEMAKER, an
    individual, D. BOONE WAYSON, an
6   individual, ELAINE P. WYNN, an individual,
    ALLAN ZEMAN, an individual,
7
                Counterdefendants.
8

9   ELAINE P. WYNN, an individual,

10              Counterclaimant and
                Crossclaimant,
11
           vs.
12
    STEPHEN A. WYNN, an individual,
13
                Crossdefendant,
14
    ARUZE USA, INC., a Nevada Corporation,
15
                Counterdefendant.
16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1

# TABLE OF CONTENTS

2

Page

3    ANSWER ......................................................................................................... 1

4    COUNTERCLAIM AND CROSSCLAIM ................................................................. 33

       I.      Subject Matter Jurisdiction ................................................. 33

5      II.     Introduction ...................................................................... 33

6      III.    The Parties ........................................................................ 34

7      IV.     General Allegations ............................................................ 34

               A.    The Creation of Wynn Resorts .................................... 34

8              B.    The April 2002 Stockholders Agreement ....................... 35

9              C.    Mr. Wynn and Aruze Amend their Agreement ................ 36

10             D.    Mr. Wynn Divorces Ms. Wynn.................................... 37

               E.    The January 2010 Stockholders Agreement ................... 38

11             F.    The Wynn Resorts Board Redeems Aruze's Stock ........... 40

12             G.    Mr. Wynn Contends that Ms. Wynn Cannot Sell Stock Without His Consent.................................................... 40

13     V.      Claims for Relief ................................................................ 40

14             First Cause Of Action ................................................................ 40

15             Second Cause Of Action ............................................................ 42

               Third Cause Of Action .............................................................. 43

16             Fourth Cause Of Action ............................................................ 44

17   DEMAND FOR JURY TRIAL............................................................................. 44

18   PRAYER FOR RELIEF.................................................................................... 44

19

20

21

22

23

24

25

26

27

28

<u>**ANSWER**</u>

Elaine P. Wynn hereby answers the First Amended Counterclaim of Defendants and Counterclaimants Aruze USA, Inc. ("Aruze" or "Aruze USA") and Universal Entertainment Corporation ("Universal") (collectively, "Counterclaimants") in the above-captioned action.

Ms. Wynn denies all allegations in the headings (which are quoted here verbatim though they are denied), tables, and photographs of the First Amended Counterclaim, in part because she lacks information sufficient to form a belief as to their truth.

Ms. Wynn is not required to respond, and does not respond, to the allegations that were not asserted against her, including: Count IV by Aruze USA against Wynn Resorts (paragraphs 199-207); Count V by Aruze USA against Wynn Resorts (paragraphs 208-218); Count VII by Aruze USA against Wynn Resorts (paragraphs 232-236); Count VIII by Aruze USA against Wynn Resorts (paragraphs 237-244); Count IX by Aruze USA against Steve Wynn and Kim Sinatra (paragraphs 245-257); Count X by Aruze USA against Wynn Resorts, Steve Wynn, and Kim Sinatra (paragraphs 258-268); Count XI by Aruze USA against Wynn Resorts, Steve Wynn, and Kim Sinatra (paragraphs 269-280); Count XII by Aruze USA against Steve Wynn and Kim Sinatra (paragraphs 281-294); Count XIII by Aruze USA against Wynn Resorts, Steve Wynn, and Kim Sinatra (paragraphs 295-304); Count XIV by Aruze USA against Wynn Resorts and Steve Wynn (paragraphs 305-321); Count XV by Aruze USA against Wynn Resorts and Steve Wynn (paragraphs 322-337); Count XVI by Aruze USA against Steve Wynn (paragraphs 338-348); Count XVII by Aruze USA against Steve Wynn (paragraphs 349-359); Count XVIII by Aruze USA against Wynn Resorts and Steve Wynn (paragraphs 360-369); Count XIX by Aruze USA against Wynn Resorts and Steve Wynn (paragraphs 370-379); Count XX by Aruze USA against Wynn Resorts and Steve Wynn (paragraphs 380-390); Count XXI by Aruze USA against Steve Wynn (paragraphs 391-394); Count XXII by Aruze USA against Wynn Resorts (paragraphs 395-402).

As to the allegations against Ms. Wynn set forth in enumerated paragraphs in the First Amended Counterclaim, Ms. Wynn responds in correspondingly numbered paragraphs as follows:

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1

**JURISDICTION AND VENUE**

2          1.      Ms. Wynn avers that, in the event and to the extent the Court were to
3  remand the entire action – a matter as to which Ms. Wynn has taken no position – federal
4  jurisdiction would be lacking unless and until a separate action were filed.  Except as expressly
5  averred, Ms. Wynn admits the allegations of paragraph 1.

6          2.      Ms. Wynn avers that, in the event and to the extent the Court were to
7  remand the entire action – a matter as to which Ms. Wynn has taken no position – federal
8  jurisdiction would be lacking unless and until a separate action were filed.  Except as expressly
9  averred, Ms. Wynn admits the allegations of paragraph 2.

10          3.      Ms. Wynn admits that venue is proper in this District because a substantial
11  part of the alleged events or omissions giving rise to the action occurred here.  Except as
12  expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the
13  allegations of paragraph 3, and denies those allegations on that basis.

14

**NATURE OF THE ACTION**

15          4.      On information and belief, Ms. Wynn admits that Wynn Resorts filed a
16  complaint against Aruze USA shortly after the Board voted to redeem Aruze's stock at a meeting
17  that took place on February 18, 2012**.**  Ms. Wynn lacks information sufficient to form a belief as
18  to the truth of the allegation that Wynn Resorts understood Aruze USA would sue upon being
19  sued and denies that allegation on that basis.  Ms. Wynn admits the allegations of footnote 1.
20  Except as expressly admitted or otherwise denied, Ms. Wynn denies the allegations of paragraph
21  4.

22          5.      Ms. Wynn admits that Wynn Resorts redeemed Aruze USA's shares at an
23  approximately 30% discount to the market price in exchange for a promissory note of around $1.9
24  billion to be paid in 10 years.  On information and belief, Ms. Wynn admits that Wynn Resorts'
25  complaint was filed on February 19, 2012.  Except as expressly admitted, Ms. Wynn denies the
26  allegations of paragraph 5, in part because she lacks information sufficient to form a belief as to
27  their truth.

28          6.      The allegations contained in paragraph 6 are legal conclusions which

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

require no response.  In the event these conclusions can be deemed allegations of fact, Ms. Wynn denies the allegations of paragraph 6.

7.      The allegations contained in paragraph 7 are legal conclusions which require no response. In the event these conclusions can be deemed allegations of fact, Ms. Wynn denies the allegations of paragraph 7.

8.      Ms. Wynn denies the allegation that there was no legitimate factual or legal basis to invoke the redemption provision.  Ms. Wynn further denies the allegations of paragraph 8, in part because she lacks information sufficient to form a belief as to their truth.

9.      Ms. Wynn denies the allegations of paragraph 9.

10.      Ms. Wynn denies the allegations of paragraph 10.

11.      Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 11, and on that basis denies the allegations.

## PARTIES

12.      Ms. Wynn denies that Aruze is currently a stockholder of Wynn Resorts. Except as expressly denied, on information and belief, Ms. Wynn admits the allegations of paragraph 12.

13.      On information and belief, Ms. Wynn admits the allegations of paragraph 13.

14.      Ms. Wynn admits the allegations of paragraph 14.

15.      Ms. Wynn admits that Stephen A. Wynn is the Chairman of the Board and Chief Executive Officer of Wynn Resorts.  Ms Wynn admits that Stephen A. Wynn is a resident of Nevada.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 15, and denies the allegations on that basis.

16.      Ms. Wynn admits that Kimmarie Sinatra is the General Counsel, Secretary, and a Senior Vice president of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 16, and denies the allegations on that basis.

17.      Ms. Wynn admits that she is a director of Wynn Resorts and is Stephen

17743363.1

ANSWER OF ELAINE WYNN, AND COUNTERCLAIM AND CROSSCLAIM; 2:12-CV-00400-LRH-PAL

Wynn's ex-spouse.  Ms. Wynn admits that she is a resident of Nevada.  On information and belief, Ms. Wynn admits that she owns 9,742,150 shares of Wynn Resorts stock as of March 1, 2012.

18.     Ms. Wynn admits that Linda Chen is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 18, and denies the allegations on that basis.

19.     Ms. Wynn admits that Ray R. Irani is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 19, and denies the allegations on that basis.

20.     Ms. Wynn admits that Russell Goldsmith is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 20, and denies the allegations on that basis.

21.     Ms. Wynn admits that Robert J. Miller is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 21, and denies the allegations on that basis.

22.     Ms. Wynn admits that John A. Moran is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 22, and denies the allegations on that basis.

23.     Ms. Wynn admits that Marc D. Schorr is a director and Chief Operating Officer of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 23, and denies the allegations on that basis.

24.     Ms. Wynn admits that Alvin V. Shoemaker is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 24, and denies the allegations on that basis.

25.     Ms. Wynn admits that D. Boone Wayson is a director of Wynn Resorts.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 25, and denies the allegations on that basis.

26.     Ms. Wynn admits that Allan Zeman is a director of Wynn Resorts.  Except

17743363.1

ANSWER OF ELAINE WYNN, AND COUNTERCLAIM AND CROSSCLAIM; 2:12-CV-00400-LRH-PAL

as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 26, and denies the allegations on that basis.

<u>**GENERAL ALLEGATIONS**</u>

**I.      Kazuo Okada and Steve Wynn Launch Wynn Resorts**

      **A.      Turned Out By Mirage Resorts, Steve Wynn Turns to Kazuo Okada to Finance the New Wynn Project**

          27.      Ms. Wynn admits that Mr. Wynn developed Mirage Resorts, Inc., which owned and operated the Mirage, Treasure Island, and the Bellagio, and that Mr. Wynn ceased being Chief Executive Officer after Mirage Resorts, Inc. merged with MGM Grand, Inc.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 27, and on that basis denies the allegations.

          28.      Ms. Wynn admits that Mr. Wynn purchased the Desert Inn casino and planned to build a new casino on that site, and that he contacted Mr. Okada about funding. Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 28, and on that basis denies the allegations.

          29.      Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 29, and on that basis denies the allegations.

          30.      Ms. Wynn admits that Valvino Lamore, LLC ("Valvino") was a Nevada limited liability company used to develop the Desert Inn project.   Ms. Wynn admits that Aruze USA contributed $260 million to Valvino in October 2000.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 30, in part because Ms. Wynn lacks information sufficient to form a belief as to the truth of those allegations.

          31.      Ms. Wynn admits that Aruze USA contributed $120 million to Valvino in April 2002.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 31, and on that basis denies those allegations.

      **B.      The Stockholders Agreement**

          32.      Ms. Wynn admits on information and belief that in 2002 steps were taken in anticipation of Wynn Resorts going public.  Except as expressly admitted, Ms. Wynn lacks

1 information sufficient to form a belief as to the truth of the allegations of paragraph 32, and on
2 that basis denies those allegations.

3         33.     Ms. Wynn admits that Mr. Wynn, Aruze USA, and Baron Asset Fund
4 entered into a Stockholders Agreement dated April 11, 2002 ("April 2002 Stockholders
5 Agreement"). Ms. Wynn admits that the April 2002 Stockholders Agreement purported to
6 establish certain restrictions on the sale of stock the signatories were to receive in "NewCo." Ms.
7 Wynn admits that NewCo was a predecessor to Wynn Resorts. Except as expressly admitted, Ms.
8 Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph
9 33, and on that basis denies those allegations.

10         34.     Ms. Wynn avers that the April 2002 Stockholders Agreement speaks for
11 itself, and denies any allegation inconsistent with that agreement.

12         35.     Ms. Wynn admits that the April 2002 Stockholders Agreement purported
13 to establish certain restrictions on the transfer of shares of Wynn Resorts common stock held by
14 the parties to that agreement. Except as expressly admitted, Ms. Wynn lacks information
15 sufficient to form a belief as to the truth of the allegations of paragraph 35, and on that basis
16 denies those allegations.

17         36.     Ms. Wynn avers that the April 2002 Stockholders Agreement speaks for
18 itself, and denies any allegation inconsistent with that agreement. Ms. Wynn specifically denies
19 the allegation that Wynn Resorts had no legal right or ability to redeem Aruze's stock, and
20 specifically denies that the April 2002 Stockholders Agreement had any bearing on Wynn
21 Resorts' power to redeem stock.

22         37.     Ms. Wynn avers that the April 2002 Stockholders Agreement speaks for
23 itself, and denies any allegation inconsistent with that agreement. Ms. Wynn further lacks
24 information sufficient to form a belief as to the truth of the allegations of paragraph 37, and on
25 that basis denies those allegations.

26         38.     Ms. Wynn avers that the April 2002 Stockholders Agreement speaks for
27 itself, and denies any allegation inconsistent with that agreement. Ms. Wynn lacks information
28 sufficient to form a belief as to whether a fiduciary duty existed between Mr. Wynn and Aruze,

- 6 -
ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1    and therefore denies that allegation.

2            39.    On information and belief, Ms. Wynn avers that, in 2006, Mr. Wynn asked

3    Mr. Okada and Aruze to enter into an Amendment to the April 2002 Stockholders Agreement.

4    Ms. Wynn avers that the Amendment dated November 8, 2006 ("2006 Amendment") speaks for

5    itself, and denies any allegation inconsistent with that amendment.

6            **C.    Wynn Resorts' Original Articles of Incorporation**

7            40.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

8    allegations of paragraph 40, and on that basis denies those allegations.

9            41.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

10   allegations of paragraph 41, and on that basis denies those allegations.

11           **D.    The Contribution Agreement**

12           42.    On information and belief, Ms. Wynn admits that the Valvino interests

13   were converted to interests in the new Wynn Resorts entity, and that Aruze USA had contributed

14   approximately $380 million for its Valvino interests.  Except as expressly admitted, Ms. Wynn

15   lacks information sufficient to form a belief as to the truth of the allegations of paragraph 42, and

16   on that basis denies those allegations.

17           43.    On information and belief, Ms. Wynn avers that Wynn Resorts' public

18   filings include a document that purports to be a Contribution Agreement among Mr. Wynn,

19   Aruze, Baron Asset Fund, Kenneth R. Wynn Family Trust, and Wynn Resorts, the contents of

20   which speaks for itself.  Except as expressly averred, Ms. Wynn lacks information sufficient to

21   form a belief as to the truth of the allegations of paragraph 43, and on that basis denies those

22   allegations.

23           44.    Ms. Wynn avers that the Contribution Agreement speaks for itself and

24   denies any allegation inconsistent with the Contribution Agreement.  Except as expressly averred,

25   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of

26   paragraph 44, and on that basis denies those allegations.

27           45.    Ms. Wynn avers that the Contribution Agreement speaks for itself and

28   denies any allegation inconsistent with the Contribution Agreement.  Ms. Wynn denies that Wynn

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

Resorts has an agreement with Aruze that precludes a redemption provision.  Except as expressly averred or otherwise denied, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations in paragraph 45, and on that basis denies those allegations.

**E.     After Securing Aruze USA's Contribution, Steve Wynn Unilaterally Amends the Articles of Incorporation**

46.     Ms. Wynn admits that the Articles of Incorporation contain a provision that allows Wynn Resorts to redeem stock under certain circumstances, and that Wynn Resorts and Mr. Wynn applied that provision to Aruze's stock in 2012.  On information and belief, Ms. Wynn denies that Mr. Wynn added the redemption provision unilaterally without Aruze's consent.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 46, and on that basis denies those allegations.

47.     Ms. Wynn avers that the April 2002 Stockholders Agreement speaks for itself, and denies any allegation inconsistent with that agreement.  Ms. Wynn lacks information sufficient to form a belief as to the truth of the additional allegations of paragraph 47, and on that basis denies those allegations.

48.     Ms. Wynn admits that the Articles of Incorporation of Wynn Resorts includes a provision that provides for redemption of stock held by unsuitable persons.  Ms. Wynn avers that the Articles of Incorporation speaks for itself and denies any allegation inconsistent with the Articles.  On information and belief, Ms. Wynn denies that Mr. Wynn added the redemption provision unilaterally without Aruze's consent.  Except as expressly admitted, denied, or averred, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 48, and on that basis denies those allegations.

49.     Ms. Wynn denies that it was "false" for Wynn Resorts and Mr. Wynn to assert that the redemption provision applies to Aruze stock.  On information and belief, Ms. Wynn denies that Aruze relied on the absence of a redemption provision in making a contribution to Wynn Resorts.  On information and belief, Ms. Wynn denies that Aruze was not and could not have been aware that the redemption provision could potentially be applied to Aruze.  Ms. Wynn further denies the other allegations of paragraph 49, in part because she lacks information

1 | sufficient to form a belief as to their truth.

2 |      **F.**    **Wynn Resorts Goes Public**

3 |      50.    Ms. Wynn admits that Mr. Okada became a board member of Wynn

4 | Resorts in October 2002.  Ms. Wynn admits that the LLC interests of Valvino were contributed to

5 | Wynn Resorts in September 2002.  Except as expressly admitted, Ms. Wynn lacks information

6 | sufficient to form a belief as to the truth of the allegations of paragraph 50, and on that basis

7 | denies those allegations.

8 |      51.    On information and belief, Ms. Wynn admits the allegations of paragraph

9 | 51.

10 |      52.    Ms. Wynn admits that Wynn Las Vegas, Wynn Macau, Encore Las Vegas,

11 | and Encore Macau have been successful.  On information and belief, Ms. Wynn admits that Mr.

12 | Okada has contributed financially to the casinos' success. Except as expressly admitted, Ms.

13 | Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph

14 | 52, and on that basis denies those allegations.

15 |      53.    Ms. Wynn admits the allegations of paragraph 53.

16 |      **G.**    **The Close and Trusting Relationship of Steve Wynn and Kazuo Okada**

17 |      54.    On information and belief, Ms. Wynn admits that Mr. Wynn considered

18 | Mr. Okada a close friend and a partner.  Except as expressly admitted, Ms. Wynn lacks

19 | information sufficient to form a belief as to the truth of the allegations of paragraph 54, and on

20 | that basis denies those allegations.

21 |      55.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

22 | allegations of paragraph 55, and on that basis denies those allegations.

23 |      56.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

24 | allegations of paragraph 56, and on that basis denies those allegations.

25 |      57.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

26 | allegations of paragraph 57, and on that basis denies those allegations.

27 | **II.**    **Universal Discloses and Ultimately Pursues Foreign Development Projects**

28 |      **A.**    **In 2007, Universal Fully Discloses to Wynn Resorts Its Interest In Pursuing a**

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

**Casino Project in the Phillippines**

58.     On information and belief, Ms. Wynn avers that Mr. Okada has been involved with business efforts in the Philippines since around 2008.  Except as expressly averred, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 58, and on that basis denies those allegations.

59.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 59, and on that basis denies those allegations.

60.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 60, and on that basis denies those allegations.

61.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 61, and on that basis denies those allegations.

62.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 62, and on that basis denies those allegations.

63.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 63, and on that basis denies those allegations.

64.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 64, and on that basis denies those allegations.

65.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 65, and on that basis denies those allegations.

**B.     With the Blessing of Wynn Resorts, Universal Commits Significant Funds and Energy to the Philippine Project**

66.     On information and belief, Ms. Wynn admits that Universal and/or its affiliates went about acquiring land in the Philippines for a planned casino.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 66, and on that basis denies those allegations.

67.     On information and belief, Ms. Wynn admits that an entity or entities affiliated with Universal or Mr. Okada purchased land near Manila Bay.  On information and belief, Ms. Wynn denies that Universal complied with the laws of the Philippines regarding

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1  citizenship for landholding.   Except as expressly admitted, Ms. Wynn lacks information

2  sufficient to form a belief as to the truth of the allegations of paragraph 67, and on that basis

3  denies those allegations.

4       68.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

5  allegations of paragraph 68, and on that basis denies those allegations.

6       **C.     Steve Wynn and Elaine Wynn Divorce**

7       69.     Ms. Wynn admits that she and Mr. Wynn began divorce proceedings in

8  March 2009.  Ms. Wynn admits that by early 2010, Ms. Wynn and Mr. Wynn had reached an

9  agreement regarding division of their community assets, including the Wynn Resorts stock then

10 held in Mr. Wynn's name.  On information and belief, Ms. Wynn admits that Aruze was Wynn

11 Resorts' largest shareholder after the division of assets between Mr. Wynn and Ms. Wynn.

12 Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 69, in part because

13 she lacks information sufficient to form a belief as to the truth of the allegations.

14      70.     Ms. Wynn admits that she, Mr. Wynn, and Aruze entered into the

15 Amended and Restated Stockholders Agreement dated January 6, 2010 ("January 2010

16 Stockholders Agreement").  Ms. Wynn avers that the January 2010 Stockholders Agreement

17 speaks for itself, and denies any allegation inconsistent with that agreement.  Except as expressly

18 admitted or averred, Ms. Wynn denies the allegations in paragraph 70, because she lacks

19 information sufficient to form a belief as to the truth of the allegations.

20      71.     Ms. Wynn avers that the January 2010 Stockholders Agreement speaks for

21 itself, and denies any allegation inconsistent with that agreement.  Except as expressly averred,

22 Ms. Wynn denies the allegations of paragraph 71, because she lacks information sufficient to

23 form a belief as to the truth of the allegations.

24      72.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

25 allegations of paragraph 72, and on that basis denies those allegations.

26      **D.     Steve Wynn and Kazuo Okada Visit the Philippines in 2010, as Wynn Resorts**

27      **Considers Involvement with the Philippine Project**

28      73.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

1    allegations of paragraph 73, and on that basis denies those allegations.

2             74.      Ms. Wynn lacks information sufficient to form a belief as to the truth of the

3    allegations of paragraph 74, and on that basis denies those allegations.

4             75.      Ms. Wynn lacks information sufficient to form a belief as to the truth of the

5    allegations of paragraph 75, and on that basis denies those allegations.

6    **E.       Over Kazuo Okada's Objection, Wynn Resorts Makes an Unprecedented**

7              **$135 Million Donation for Wynn Macau**

8             76.      Ms. Wynn denies that the duration of Wynn Resorts' donation to Macau is

9    "suspiciou[s]."  On information and belief, Ms. Wynn admits the other allegations of paragraph

10   76.

11            77.      Ms. Wynn admits that Mr. Okada, in his capacity as a Wynn Resorts

12   director, voted against the donation to the University of Macau Development Foundation.  Ms.

13   Wynn admits that Mr. Okada raised objections to the size and the term of the donation.  Except as

14   expressly admitted, Ms. Wynn denies the allegations of paragraph 77.

15            78.      Ms. Wynn lacks information sufficient to form a belief as to the truth of

16   and therefore denies the allegation that the alleged fact is "[n]otabl[e]," and avers that she

17   believes she was unaware of the alleged fact at the time.  Ms. Wynn admits that the head of

18   Macau's government is also the chancellor of the University of Macau.  Ms. Wynn lacks

19   sufficient information to form a belief as to whether that individual has "ultimate oversight of

20   gaming matters," and therefore denies that allegation.

21            79.      Ms. Wynn admits that Wynn Resorts received a legal opinion that

22   sanctioned the donation to the University of Macau Development Foundation. Except as

23   expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the

24   allegations of paragraph 79, and on that basis denies those allegations.

25            80.      On information and belief, Ms. Wynn admits that Wynn Resorts has

26   received a letter from the Securities Exchange Commission regarding its Macau donation and that

27   the SEC has made inquiries.  Except as expressly admitted, Ms. Wynn lacks information

28   sufficient to form a belief as to the truth of the allegations of paragraph 80, and on that basis

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1    denies those allegations.

2         **F.    Steve Wynn and Kim Sinatra Fraudulently Promise Kazuo Okada Financing**

3              **for the Philippine Project**

4              81.    Ms. Wynn admits that Mr. Wynn married his current wife in or around

5    April 2011.  On information and belief, Ms. Wynn avers that Mr. Wynn contacted Mr. Okada

6    regarding a potential sale of Ms. Wynn's stock.  Except as expressly admitted or averred, Ms.

7    Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph

8    81, and on that basis denies those allegations.

9              82.    On information and belief, Ms. Wynn admits that, sometime in 2011, Mr.

10   Wynn asked Mr. Okada to consent to a transfer of Ms. Wynn's shares. Except as expressly

11   admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations

12   of paragraph 82, and on that basis denies those allegations.

13             83.    On information and belief, Ms. Wynn admits that Mr. Okada was amenable

14   to allowing Ms. Wynn to transfer her stock.  Except as expressly admitted, Ms. Wynn lacks

15   information sufficient to form a belief as to the truth of the allegations of paragraph 83, and on

16   that basis denies those allegations.

17             84.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

18   allegations of paragraph 84, and on that basis denies those allegations.

19             85.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

20   allegations of paragraph 85, and on that basis denies those allegations.

21             86.    Ms. Wynn denies the allegations of paragraph 86, in part because she lacks

22   information sufficient to form a belief as to their truth.

23             87.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

24   allegations of paragraph 87, and on that basis denies those allegations.

25             88.    On information and belief, Ms. Wynn admits that Mr. Okada signed a

26   waiver and consent granting her the option to transfer her stock.  Except as expressly admitted,

27   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of

28   paragraph 88, and on that basis denies those allegations.

89.     On information and belief, Ms. Wynn admits that Mr. Okada signed a waiver and consent granting her the option to transfer her stock. Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 89, and on that basis denies those allegations.

90.     Ms. Wynn admits that Wynn Resorts has SOX compliance policies. Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 90, and on that basis denies those allegations.

91.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 91, and on that basis denies those allegations.

92.     On information and belief, Ms. Wynn admits that Aruze stated that it would allow her to transfer her shares.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 92, and on that basis denies those allegations.

93.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 93, and on that basis denies those allegations.

94.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 94, and on that basis denies those allegations.

95.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 95, and on that basis denies those allegations.

96.     Ms. Wynn admits that Bob Miller is a member of Wynn Resorts' Compliance Committee.  Except as expressly admitted, Ms. Wynn denies those allegations of paragraph 96, in part because she lacks information sufficient to form a belief as to the truth of the allegations of paragraph 96.

**G.      The Chair of Universal's and Aruze Gaming America's Compliance Committee Resigns**

97.     Ms. Wynn admits that Mr. Schreck has a long-standing relationship with Mr. Wynn and acted as a lawyer for Mr. Wynn or Wynn Resorts, that Mr. Schreck worked for Mr. Okada and/or entities affiliated with Mr. Okada, and that Mr. Schreck eventually left his

1  position with Mr. Okada.  Except as expressly admitted, Ms. Wynn lacks information sufficient to

2  form a belief as to the truth of the allegations of paragraph 97, and on that basis denies those

3  allegations.

4          98.      Ms. Wynn lacks information sufficient to form a belief as to the truth of the

5  allegations of paragraph 98, and on that basis denies those allegations.

6          99.      Ms. Wynn admits that Mr. Schreck's law firm acted as counsel for Wynn

7  Resorts in the Nevada state court action regarding Mr. Okada's document inspection demand.

8  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 99, in part because

9  she lacks information sufficient to form a belief as to the truth of those allegations.

10  **III.    Steve Wynn Directs Wynn Resorts to Conduct a Pretextual Investigation for the**

11          **Purpose of Redeeming Aruze USA's Shares**

12      **A.    Wynn Resorts Seeks Kazuo Okada's Resignation and Threatens Redemption**

13          **in an Attempt to Secure a Personal Benefit for Steve Wynn**

14          100.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

15  allegations of paragraph 100, and on that basis denies those allegations.

16          101.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

17  allegations of paragraph 101, and on that basis denies those allegations.

18          102.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

19  allegations of paragraph 102, and on that basis denies those allegations.

20          103.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

21  allegations of paragraph 103, and on that basis denies those allegations.

22          104.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

23  allegations of paragraph 104, and on that basis denies those allegations.

24          105.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

25  allegations of paragraph 105, and on that basis denies those allegations.

26          106.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

27  allegations of paragraph 106, and on that basis denies those allegations.

28          107.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1    allegations of paragraph 107, and on that basis denies those allegations.

2       **B.     Steve Wynn and Kim Sinatra Try to Intimidate and Threaten Kazuo Okada,**

3            **While Hiding Supposed Evidence of Wrongdoing**

4            108.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

5    allegations of paragraph 108, and on that basis denies those allegations.

6            109.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

7    allegations of paragraph 109, and on that basis denies those allegations.

8            110.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

9    allegations of paragraph 110, and on that basis denies those allegations.

10           111.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

11   allegations of paragraph 111, and on that basis denies those allegations.

12           112.    Ms. Wynn lacks information sufficient to form a belief as to what

13   "characterizations" Mr. Wynn made, and on that basis denies that allegation.  On information and

14   belief, Ms. Wynn denies the additional allegations of paragraph 112.

15           113.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

16   allegations of paragraph 113, and on that basis denies those allegations.

17           114.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

18   allegations of paragraph 114, and on that basis denies those allegations.

19      **C.     A Letter From Steve Wynn's Outside Lawyer Confirms that, While Wynn**

20           **Resorts Had Already Determined the Outcome, a Pretextual "Investigation"**

21           **Was Only Just Starting**

22           115.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

23   allegations of paragraph 115, and on that basis denies those allegations.

24           116.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

25   allegations of paragraph 116, and on that basis denies those allegations.

26      **D.     Wynn Resorts Refuses to Allow Kazuo Okada and Aruze USA to Review Any**

27           **Supposed "Evidence"**

28           117.    Ms. Wynn denies the allegations of paragraph 117, in part because Ms.

- 16 -

Wynn lacks information sufficient to form a belief as to the truth of the allegations.

**E.      The Board Summarily Removes Kazuo Okada As Vice-Chairman**

118.      Ms. Wynn admits that Mr. Miller and/or others made a oral presentation regarding Mr. Okada's activities at a meeting on or around November 1, 2011.  Ms. Wynn avers that Mr. Okada participated in the meeting.  Except as expressly admitted or averred, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 118, and on that basis denies those allegations.

119.      Ms. Wynn admits that the Compliance Committee retained Freeh Sporkin & Sullivan LLP ("Free Sporkin") to conduct an investigation with respect to Mr. Okada activities overseas.  Ms. Wynn admits that the Board voted to eliminate the position of Vice Chairman and accepted the Compliance Committee's retention of Freeh Sporkin.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 119.

**F.      Kazuo Okada Seeks More Information Regarding Wynn Macau**

120.      On information and belief, Ms. Wynn admits that Mr. Okada has filed an action in Nevada state court to seek access to Wynn Resort's records.  Ms. Wynn denies that any actions by the Board were "highly suspicious."  Except as expressly admitted or denied, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 120, and on that basis denies those allegations.

**G.      Aruze USA Nominates Directors, But Steve Wynn Refuses to Endorse Them Despite His Obligation to Do So**

121.      Ms. Wynn denies the allegation that Mr. Wynn "refused" Aruze's request to endorse its slate of directors, but avers on information and belief that written communications in response to Aruze declined to take a position on the slate and said the subject would be addressed later; she further avers that Mr. Wynn indicated at the time behind the scenes that he had no intention of supporting the Aruze slate and did not endorse it.  Except as expressly denied or averred, Ms Wynn admits the allegations of paragraph 121.

**H.      The Freeh Investigation Proceeds Without Seeking Any Input From Kazuo Okada**

17743363.1

- 17 -

122.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 122, and on that basis denies those allegations.

123.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 123, and on that basis denies those allegations.

124.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 124, and on that basis denies those allegations.

125.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 125, and on that basis denies those allegations.

**I.     Freeh Sporkin Refuses to Provide Meaningful Information Regarding the Investigation to Kazuo Okada**

126.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 126, and on that basis denies those allegations.

127.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 127, and on that basis denies those allegations.

128.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 128, and on that basis denies those allegations.

**J.     Kazuo Okada Voluntarily Sits For A Full-Day Interview With Freeh Sporkin**

129.   On information and belief, Ms. Wynn admits that Mr. Okada sat for an interview with Mr. Freeh on February 15, 2012.  Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 129, and on that basis denies those allegations.

130.   On information and belief, Ms. Wynn admits that Mr. Freeh asked Mr. Okada about expenses paid by Universal and/or its agents or affiliates for lodging and meals at Wynn Resorts properties, and about compliance with Philippine landownership requirements. Except as expressly admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 130, and on that basis denies those allegations.

131.   Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 131, and on that basis denies those allegations.

**K.      Wynn Resorts Allows No Opportunity for A Reasonable Response**

132.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 132, and on that basis denies those allegations.

133.    Ms. Wynn avers that the complaint filed by Wynn Resorts speaks for itself and denies any allegation inconsistent with the complaint.

134.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 134, and on that basis denies those allegations.

135.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 135, and on that basis denies those allegations.

136.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 136, and on that basis denies those allegations.

137.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 137, and on that basis denies those allegations.

138.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 138, and on that basis denies those allegations.

139.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 139, and on that basis denies those allegations.

140.    Ms. Wynn admits that the Board voted to redeem Aruze's shares, at a valuation that reflected a discount to the trading price, on the day the directors received the Freeh Sporkin report.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 140, in part because she lacks information sufficient to form a belief as to their truth.

141.    Ms. Wynn denies the allegations of paragraph 141, in part because she lacks information sufficient to form a belief as to their truth.

**L.      Steve Wynn Hurriedly Schedules Board of Directors Meeting**

142.    Ms. Wynn admits that a board meeting of Wynn Resorts took place on Saturday, February 18, 2012, and that the Freeh Sporkin report was on the agenda.  On information and belief, Ms. Wynn admits that Freeh Sporkin interviewed Mr. Okada on February 15, 2012.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 142, in

17743363.1

1  part because she lacks information sufficient to form a belief as to their truth.

2  **M.  Steve Wynn Tries to Use the Threat of Redemption to Buy Aruze USA's**

3  **Stock at a Substantial Discount**

4  143.  Ms. Wynn lacks information sufficient to form a belief as to the truth of the

5  allegations of paragraph 143, and on that basis denies those allegations.

6  144.  On information and belief, Ms. Wynn avers that Mr. Doumani had invested

7  in one of Mr. Wynn's properties, and that Mr. Wynn had expressed concern about Mr. Doumani's

8  association with certain individuals.  Except as expressly averred, Ms. Wynn denies the

9  allegations of paragraph 144, in part because she lacks information sufficient to form a belief as

10  to their truth.

11  **IV.  Wynn Resorts' Unfounded and Unprecedented Redemption of More Than $2.9**

12  **Billion of Aruze USA's Shares**

13  **A.  Wynn Resorts Publicly Asserts That the Value of Aruze USA's Stock Is $2.9**

14  **Billion**

15  145.  Ms. Wynn lacks information sufficient to form a belief as to the truth of the

16  allegations of paragraph 145, and on that basis denies those allegations.

17  146.  Ms. Wynn lacks information sufficient to form a belief as to the truth of the

18  allegations of paragraph 146, and on that basis denies those allegations.

19  **B.  The Board Hurriedly Meets and Rushes to Redeem Aruze USA's Stock**

20  147.  Ms. Wynn avers that Mr. Okada's counsel purportedly sent a letter dated

21  February 17, 2012 to a representative of Wynn Resorts.  Ms. Wynn avers that the letter speaks for

22  itself and denies any allegation inconsistent with the letter.

23  148.  Ms. Wynn lacks information sufficient to form a belief as to the truth of the

24  allegations of paragraph 148, and on that basis denies those allegations.

25  149.  Ms. Wynn admits that Mr. Wynn yelled at Mr. Okada's counsel when he

26  introduced himself.  Ms. Wynn admits that Mr. Wynn said that Mr. Okada's counsel should not

27  be present.  Ms. Wynn admits that Mr. Okada was told that he needed to enter into a

28  nondisclosure agreement in order to receive a copy of the Freeh Sporkin report.  Ms. Wynn

- 20 -

1    admits that Mr. Okada did not agree to enter into a nondisclosure agreement.  Except as expressly

2    admitted, Ms. Wynn denies the allegations of paragraph 149, in part because she lacks

3    information sufficient to form a belief as to their truth.

4         150.    On information and belief, My Wynn admits that a copy of the Freeh

5    Sporkin report is attached to Wynn Resorts' Complaint.  Except as expressly admitted, Ms. Wynn

6    lacks information sufficient to form a belief as to the truth of the allegations of paragraph 150,

7    and on that basis denies those allegations.

8         151.    Ms. Wynn admits that there were translation problems during the Board

9    meeting.  Ms. Wynn admits that Mr. Okada requested that the translation be provided sequentially

10   rather than simultaneously, and that the request was denied.  Except as expressly admitted, Ms.

11   Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph

12   151, and on that basis denies those allegations.

13        152.    Ms. Wynn admits that Mr. Freeh made a presentation in English. Ms.

14   Wynn admits that after Mr. Freeh completed his presentation, the Board asked if Mr. Okada had

15   any questions.  Ms. Wynn admits that Mr. Okada asked the Board to delay making any

16   resolutions.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 152, in

17   part because she lacks information sufficient to form a belief as to their truth.

18        153.    Ms. Wynn avers that there were technical difficulties during the Board

19   meeting.  Ms. Wynn admits that the connection with Mr. Okada was lost at some point during the

20   meeting, and that no other contact was made with Mr. Okada.  Except as expressly admitted or

21   averred, Ms. Wynn denies the allegations of paragraph 153, in part because she lacks information

22   sufficient to form a belief as to their truth.

23        154.    Ms. Wynn admits that Wynn Resorts gave Aruze notice that Aruze's stock

24   was redeemed for a note of approximately $1.936 billion, which reflected a discount of around

25   30% to the trading price.  Except as expressly admitted, Ms. Wynn lacks information sufficient to

26   form a belief as to the truth of the allegations of paragraph 154, and on that basis denies those

27   allegations.

28        155.    Ms. Wynn lacks information sufficient to form a belief as to the truth of the

1  allegations of paragraph 155, and on that basis denies those allegations.

2     156. Ms. Wynn admits that Wynn Resorts filed a complaint that attached a copy

3  of the report without exhibits but is without information sufficient to form a belief about the

4  timing and form of the filing and on that basis denies those allegations of paragraph 156.

5     157. Ms. Wynn lacks information sufficient to form a belief as to the truth of the

6  allegations of paragraph 157, and on that basis denies those allegations.

7    **C.**  **Aruze USA Disputes That Redemption Has Occurred**

8     158. Ms. Wynn admits that the redemption has taken place, and that Wynn

9  Resorts has so stated.  Ms. Wynn admits that Aruze disputes the validity of the redemption.

10  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 158.

11    **D.**  **The Board Redeems on False Premises**

12     159. Ms. Wynn avers that Aruze is bound by the redemption provision, and

13  admits that Aruze disputes that it is bound by the redemption provision.  Ms. Wynn avers that the

14  Articles of Incorporation speak for themselves, and denies any allegation inconsistent with the

15  Articles of Incorporation.

16     160. Ms. Wynn avers that the Articles of Incorporation speak for themselves,

17  and denies any allegation inconsistent with the Articles of Incorporation.  On information and

18  belief, Ms. Wynn admits that Aruze had been found previously to be "suitable" by the Nevada

19  Gaming Commission as a shareholder of Wynn Resorts and that she did not understand the

20  redemption to be based on a finding of unsuitability by a gaming authority.  Except as expressly

21  admitted, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations

22  of paragraph 160, and denies the allegations on that basis.

23     161. Ms. Wynn avers that the Articles of Incorporation speak for themselves,

24  and denies any allegation inconsistent with the Articles of Incorporation. On information and

25  belief, Ms. Wynn admits that Wynn Resorts and its affiliates have not lost, and have not been

26  threatened with the loss of, a gaming license, and that she did not understand the redemption to be

27  based on such a loss or threatened loss. Except as expressly admitted, Ms. Wynn lacks

28  information sufficient to form a belief as to the truth of the allegations of paragraph 161, and

- 22 -

1   denies the allegations on that basis.

2          162.    Ms. Wynn avers that the Articles of Incorporation speak for themselves,

3   and denies any allegation inconsistent with the Articles of Incorporation.  Except as expressly

4   averred, Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations

5   of paragraph 162, and denies those allegations on that basis.

6          163.    Ms. Wynn denies the allegations of paragraph 163, in part because she

7   lacks information sufficient to form a belief as to their truth.

8       **E.      Even if Aruze USA Was Subject to the Redemption Provision (Which it is**

9              **Not), the Unilateral Blanket 30% Discount that Wynn Resorts Applied to the**

10             **Stock Is Erroneous and the Promissory Note is Unconscionably Vague,**

11             **Ambiguous, and Oppressive**

12         164.    Ms. Wynn admits that Wynn Resorts issued a promissory note in the

13  amount of approximately $1.9 billion.  On information and belief, Ms. Wynn admits that the price

14  reflected an approximately 30% discount to the trading price of Wynn Resorts stock on

15  NASDAQ at or around the time of the redemption.  On information and belief, Ms. Wynn admits

16  that Wynn Resorts issued a press release on February 19, 2011 regarding the redemption.  Ms.

17  Wynn avers that the press release speaks for itself, and denies any allegation inconsistent with the

18  press release.  Ms. Wynn denies that the Stockholders Agreement precludes the redemption of

19  Aruze's stock.  Ms. Wynn admits that some of the purported contractual transfer restrictions

20  could be found to constitute unreasonable restraints on alienability.  Ms. Wynn denies that

21  contractual transfer restrictions could not "legitimately impact" the value of Aruze's shares at the

22  time the redemption occurred.

23         165.    Ms. Wynn avers that the press release speaks for itself, and denies any

24  allegation inconsistent with the press release.  On information and belief, Ms. Wynn denies that

25  Mr. Wynn unilaterally added the redemption provision to the Articles of Incorporation without

26  Aruze's consent.  Except as expressly averred or denied, Ms. Wynn lacks information sufficient

27  to form a belief as to the truth of the allegations of paragraph 165, and on that basis denies those

28  allegations.

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

166.    Ms. Wynn admits that the Board of Wynn Resorts considered a valuation opinion from Moelis & Company.  Ms. Wynn admits that Moelis & Company had done business with Wynn Resorts in the past.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 166.

167.    Ms. Wynn admits that Mr. Wynn has a long-standing professional relationship with Mr. Moelis.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 167, in part because she lacks information sufficient to form a belief as to their truth.

168.    On information and belief, Ms. Wynn admits that Moelis & Company opined that a 30% discount was appropriate.  Ms. Wynn avers that the Stockholders Agreement speaks for itself, and denies any allegation inconsistent with the Stockholders Agreement.  Except as expressly admitted or averred, Ms. Wynn denies the allegations of paragraph 168, in part because she lacks information sufficient to form a belief as to their truth.

169.    Ms. Wynn admits that the $1.936 billion promissory note issued to Aruze bears 2% interest per annum and is subordinate to other Wynn Resorts debt obligations as set forth in the promissory note.  Ms. Wynn avers that the promissory note speaks for itself and denies any allegation inconsistent with the promissory note.  Ms. Wynn admits that Wynn Resorts issued notes in March 2012 with principal amount of approximately $900 million and bearing interest at 5.375%.  Ms. Wynn avers that Mr. Okada did not participate in the Board's discussion of the terms of the promissory note during the Board meeting of February 18, 2012.  Except as expressly admitted or averred, Ms. Wynn denies the allegations of paragraph 169, in part because she lacks information sufficient to form a belief as to their truth.

**F.      The Timing of the Redemption Demonstrates that Wynn Resorts Redeemed Aruze USA's Shares Based on Material, Non-Public Information that Was Not Incorporated Into the Redemption Price**

170.    On information and belief, Ms. Wynn admits the allegations of paragraph 170.

171.    Ms. Wynn avers that the Form 8-K speaks for itself and denies any allegation inconsistent with that document.

- 24 -

172.     Ms. Wynn lacks information sufficient to form a belief as to the truth of the allegations of paragraph 172, and denies those allegations on that basis.

173.     Ms. Wynn avers that the Form 8-K speaks for itself and denies any allegation inconsistent with that document.

174.     Ms. Wynn denies the allegations of paragraph 174, in part because she lacks information sufficient to form a belief as to their truth.

**CLAIMS FOR RELIEF**

**COUNT I**

**DECLARATORY RELIEF**

**(By Aruze USA and Universal Against Wynn Resorts and the Wynn Directors)**

175.     Ms. Wynn reasserts her responses to paragraphs 4 through 174 above, as if fully set forth below.

176.     Ms. Wynn admits that Aruze and Universal are purportedly seeking a judicial declaration.  Ms. Wynn denies that the declaration Aruze and Universal seek is appropriate.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 176.

177.     Ms. Wynn admits that Aruze and Universal are purportedly seeking a judicial declaration.  Ms. Wynn denies that the declaration Aruze and Universal seek is appropriate.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 177.

178.     Ms. Wynn admits that Aruze and Universal are purportedly seeking a judicial declaration.  Ms. Wynn denies that the declaration Aruze and Universal seek is appropriate.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 178.

179.     Ms. Wynn admits that Aruze and Universal are purportedly seeking a judicial declaration.  Ms. Wynn denies that the declaration Aruze and Universal seek is appropriate.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 179.

180.     Ms. Wynn admits that Aruze and Universal are purportedly seeking a judicial declaration.  Ms. Wynn admits that the valuation opinion Mr. Moelis presented to the Board did not consider whether the transfer restrictions were valid as to Aruze.  Ms. Wynn denies that the declaration Aruze and Universal seek is appropriate.  Except as expressly admitted, Ms.

1    Wynn denies the allegations of paragraph 180.

2          181.    The allegations of paragraph 181 are legal conclusions that do not require a

3    response.  In any event, Ms. Wynn denies those allegations to the extent they constitute

4    allegations of fact, on the ground that she lacks information sufficient to form a belief as to their

5    truth.

6          182.    Ms. Wynn admits that an actual controversy exists between the parties, and

7    that the dispute is ripe for adjudication.  Ms. Wynn denies that Wynn Resorts acted unlawfully

8    when it redeemed Aruze's stock.

9          183.    Ms. Wynn denies the allegations of paragraph 183.

10                                    **COUNT II**

11                        **Permanent Prohibitory Injunction**

12            **(By Aruze USA Against Wynn Resorts and the Wynn Directors)**

13         184.    Ms. Wynn reasserts her responses to paragraphs 4 through 174 above, as if

14    fully set forth below.

15         185.    Ms. Wynn admits that Aruze is purportedly seeking a permanent

16    injunction.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 185.

17         186.    Ms. Wynn denies the allegations of paragraph 186.

18         187.    Ms. Wynn denies the allegations of paragraph 187.

19         188.    Ms. Wynn denies the allegations of paragraph 188.

20         189.    The allegations of paragraph 189 are legal conclusions that do not require a

21    response.  In any event, Ms. Wynn denies those allegations to the extent they constitute

22    allegations of fact, on the ground that she lacks information sufficient to form a belief as to their

23    truth.

24         190.    Ms. Wynn denies the allegations of paragraph 190.

25                                    **COUNT III**

26                        **Permanent Mandatory Injunction**

27            **(By Aruze USA Against Wynn Resorts and the Wynn Directors)**

28         191.    Ms. Wynn reasserts her responses to paragraphs 4 through 174 above, as if

1  fully set forth below.

2          192.    Ms. Wynn admits that Aruze is purportedly seeking a permanent

3  injunction.  Except as expressly admitted, Ms. Wynn denies the allegations of paragraph 192.

4          193.    Ms. Wynn denies the allegations of paragraph 193.

5          194.    Ms. Wynn denies the allegations of paragraph 194.

6          195.    Ms. Wynn denies the allegations of paragraph 195.

7          196.    Ms. Wynn admits that Aruze is purportedly seeking damages.  Except as

8  expressly admitted, Ms. Wynn denies the allegations of paragraph 196.

9          197.    The allegations of paragraph 197 are legal conclusions that do not require a

10 response.  In any event, Ms. Wynn denies those allegations to the extent they constitute

11 allegations of fact, on the ground that she lacks information sufficient to form a belief as to their

12 truth.

13         198.    Ms. Wynn denies the allegations of paragraph 198.

14                          **COUNT VI**

15                     **Breach of Fiduciary Duty**

16              **(By Aruze USA Against the Wynn Directors)**

17         219.    Ms. Wynn reasserts her responses to paragraphs 4 through 174 above, as if

18 fully set forth below.

19         220.    The allegations of paragraph 220 are legal conclusions that do not require a

20 response.

21         221.    The allegations of paragraph 221 are legal conclusions that do not require a

22 response.

23         222.    Ms. Wynn avers that the Articles of Incorporation speaks for itself, and

24 denies any allegations inconsistent with the Articles of Incorporation.

25         223.    Ms. Wynn denies the allegations of paragraph 223.

26         224.    Ms. Wynn denies the allegations of paragraph 224.

27         225.    Ms. Wynn denies the allegations of paragraph 225.

28         226.    Ms. Wynn denies the allegations of paragraph 226.

227.    Ms. Wynn denies the allegations of paragraph 227.

228.    Ms. Wynn denies the allegations of paragraph 228.

229.    Ms. Wynn denies the allegations of paragraph 229.

230.    The allegations of paragraph 230 are legal conclusions that do not require a response.  In any event, Ms. Wynn denies those allegations to the extent they constitute allegations of fact, on the ground that she lacks information sufficient to form a belief as to their truth.

231.    Ms. Wynn denies the allegations of paragraph 231.

## AFFIRMATIVE DEFENSES

Ms. Wynn asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Each of Counterclaimants' claims against Ms. Wynn fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part due to their unclean hands, including but not limited to their conduct and the conduct of their affiliates in the Philippines and Korea.

## THIRD AFFIRMATIVE DEFENSE

### (Estoppel)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine of laches.

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

## FIFTH AFFIRMATIVE DEFENSE

### (Waiver)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine of waiver.

## SIXTH AFFIRMATIVE DEFENSE

### (Election of Remedies)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine of election of remedies, because *inter alia* Counterclaimants seek inconsistent remedies with respect to the Stockholders' Agreement.

## SEVENTH AFFIRMATIVE DEFENSE

### (Limitation on Liability)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part because Ms. Wynn's liability, if any, is limited by Wynn Resorts' Articles of Incorporation, Bylaws, and Nevada law, including N.R.S. § 78.138.

## EIGHTH AFFIRMATIVE DEFENSE

### (Authorization by Articles of Incorporation)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part because Ms. Wynn's actions are authorized by and comport with Wynn Resorts' Articles of Incorporation, Bylaws, and Nevada law.

## NINTH AFFIRMATIVE DEFENSE

### (Ratification)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part because Counterclaimants and Mr. Okada ratified the Counterdefendants' actions, including amendments to the Articles of the Incorporation.

## TENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the applicable statute(s) of limitations.

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1

## ELEVENTH AFFIRMATIVE DEFENSE

2

### (Adequate Remedy at Law)

3

Counterclaimants' claims for injunctive relief against Ms. Wynn are barred in whole or in

4

part by the availability of adequate remedies at law.

5

## TWELFTH AFFIRMATIVE DEFENSE

6

### (Consent)

7

Counterclaimants' claims are barred in whole or in part because Mr. Okada consented to

8

the Counterdefendant's actions, including amendments to the Articles of Incorporation.

9

## THIRTEENTH AFFIRMATIVE DEFENSE

10

### (Privilege)

11

The alleged acts or omissions of Ms. Wynn that allegedly give rise to liability herein, if

12

any such acts or omissions occurred, were legally privileged and cannot give rise to any liability

13

on the part of Ms. Wynn.

14

## FOURTEENTH AFFIRMATIVE DEFENSE

15

### (Justification)

16

The alleged acts and omissions of Ms. Wynn that allegedly give rise to liability herein, if

17

any such acts or omissions occurred, were legally justified and cannot give rise to any liability on

18

the part of Ms. Wynn.

19

## FIFTEENTH AFFIRMATIVE DEFENSE

20

### (Punitive Damages Are Unconstitutional)

21

If and to the extent Counterclaimants seek punitive damages against Ms. Wynn, Nevada's

22

laws and statutes for punitive damages are unconstitutional because they are void for vagueness,

23

violates equal protection, violates due process, violates freedom of contract, and impose an undue

24

burden on interstate commerce.

25

## SIXTEENTH AFFIRMATIVE DEFENSE

26

### (Limitations on Punitive Damages)

27

28

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1   If and to the extent Counterclaimants seek punitive damages against Ms. Wynn, punitive

2   damages in this case are barred in whole or in part by constitutional limitations, including but not

3   limited to due process, and are barred to the extent they duplicate other damages.

4   ### SEVENTEENTH AFFIRMATIVE DEFENSE

5   **(Lack of Standing)**

6   Counterclaimants' claims against Ms. Wynn are barred in whole or in part because they

7   lack standing to assert some or all of their claims.

8   ### EIGHTEENTH AFFIRMATIVE DEFENSE

9   **(Release and Indemnification)**

10  Counterclaimants claims against Ms. Wynn are barred in whole or in part because

11  Counterclaimants are required under the Articles of Incorporation to indemnify and hold harmless

12  Wynn Resorts for any losses, including attorney's fees, resulting from their conduct.

13  ### NINETEENTH AFFIRMATIVE DEFENSE

14  **(Contributory Negligence)**

15  Counterclaimants' claims against Ms. Wynn are barred in whole or in part by their and

16  Mr. Okada's own actions, omissions, negligence, and/or malfeasance.

17  ### TWENTIETH AFFIRMATIVE DEFENSE

18  **(Comparative Negligence)**

19  Counterclaimants' claims against Ms. Wynn are barred in whole or in part because

20  Counterclaimants' damages, if any, were caused by Counterclaimants' and Mr. Okada's own

21  negligence, and such negligence was greater than any negligence, which is expressly denied, on

22  the part of Ms. Wynn.

23  ### TWENTY-FIRST AFFIRMATIVE DEFENSE

24  **(Res Judicata)**

25  Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine

26  of res judicata.

27  ### TWENTY-SECOND AFFIRMATIVE DEFENSE

28  **(Collateral Estoppel)**

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1    Counterclaimants' claims against Ms. Wynn are barred in whole or in part by the doctrine

2  of collateral estoppel.

3                                   **<u>RESERVATION</u>**

4    Ms. Wynn reserves the right to amend its answer to plead additional affirmative defenses

5  as they become known and appropriate during the course of this litigation.

6                                   **<u>JURY DEMAND</u>**

7    Ms. Wynn demands trial by jury on all issues so triable.

8

9    WHEREFORE, Ms. Wynn prays that judgment be entered as follows:

10        1.  that Counterclaimants take nothing from Ms. Wynn by virtue of their First

11            Amended Counterclaim;

12        2.  that the First Amended Counterclaim and each purported cause of action set forth

13            therein against Ms. Wynn be dismissed with prejudice;

14        3.  that Ms. Wynn be awarded her costs and reasonable attorney's fees incurred herein

15            as allowed by law; and

16        4.  for such further relief is deemed just and equitable.

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

**COUNTERCLAIM AND CROSSCLAIM**

**I.      Subject Matter Jurisdiction**

1.      In the event the Court does not remand the entire action, the Court has supplemental jurisdiction over this Counterclaim and Crossclaim pursuant to 28 U.S.C. § 1367. The Counterclaim and Crossclaim form part of the same case or controversy as the Complaint filed by Wynn Resorts and the First Amended Counterclaim filed by Aruze USA, Inc. ("Aruze" or "Aruze USA") and Universal Entertainment Corporation ("Universal").

**II.      Introduction**

2.      This is an action seeking a declaration that a stockholders agreement imposing onerous restrictions on Elaine P. Wynn's ability to sell her stock in Wynn Resorts, Limited ("Wynn Resorts") is invalid.  The central premise and motivating reason for the restrictions were that Kazuo Okada (through Aruze) was a significant stockholder whose shares were similarly restricted – but that those restrictions could not continue unless Ms. Wynn's shares were restricted as well.  Now that the shares held by Mr. Okada's company have been redeemed, the purpose of the stockholders agreement has been frustrated, and the basis for enforcing the agreement's restrictions has been eliminated.

3.      In addition, to the extent the stockholders agreement purports to impose certain sale restrictions beyond a right of first refusal, those restrictions lack the reasonable basis they are required by law to have.  They do not serve a legitimate corporate purpose but rather are intended to maintain the controlling position of Stephen A. Wynn and Mr. Okada.  As such they are an impermissible and unlawful restriction on the alienability of Ms. Wynn's shares and are also invalid on this alternative basis.

4.      Ms. Wynn seeks to invalidate these unlawful restrictions for good and valid reasons.  First, having had a long history of involvement in charitable and community endeavors, she desires to realize the value of her stock so that she may provide significant assistance to various important causes she has supported over the years and may support in the future.  Second, Ms. Wynn seeks to invalidate these restrictions so that she may implement estate planning measures that will protect the value of her investment for her children.

- 33 -

III.     **The Parties**

5.      Counterdefendant, counterclaimant, and crossclaimant Elaine Wynn is, at all relevant times, a citizen of Nevada.

6.      Counterdefendant and crossdefendant Stephen A. Wynn is, at all relevant times, a citizen of Nevada.

7.      Defendant, counterclaimant, and counterdefendant Aruze USA, Inc. is a company organized and existing under the laws of Nevada.  On information and belief, Aruze is controlled by Kazuo Okada at all relevant times, and is the entity Mr. Okada used to hold shares in Wynn Resorts.

IV.     **General Allegations**

8.      Ms. Wynn is the former spouse of Mr. Wynn.  Ms. Wynn married Mr. Wynn in 1963.  They divorced in 1986, remarried in 1991, and then divorced a second time in 2009.

9.      Ms. Wynn made significant contributions to the success of Wynn Resorts. She has played important roles in many aspects of the company's operations, including personnel management, public relations, and design of the ambience and customer experience at Wynn Resorts properties.

10.     Between 1977 and 2000, Ms. Wynn served as a director of Mirage Resorts.

11.     Ms. Wynn has served as a director of Wynn Resorts since October 2002.

A.      **The Creation of Wynn Resorts**

12.     In 2000, Mr. Wynn purchased the Desert Inn in Las Vegas.  The Desert Inn site would eventually be rebuilt as the casino resort Wynn Las Vegas.  The entity Mr. Wynn used to hold the Desert Inn property was the Nevada limited liability company Valvino Lamore, LLC ("Valvino"), which Mr. Wynn formed in April 2000.

13.     Mr. Wynn turned to Mr. Okada to help finance this new project. In October 2000, Aruze contributed $260 million to Valvino and became a member of Valvino.

14.     In April 2002, Aruze contributed a further $120 million to Valvino.

15.     As of April 2002, Mr. Wynn and Aruze each held a 47.5% interest in

1   Valvino.  Baron Asset Fund ("Baron"), a Massachusetts business trust, at that time had a 5%

2   interest in Valvino.

3   16.   Mr. Wynn, Aruze, and Baron were the only members of Valvino.

4   17.   In 2002, Mr. Wynn, Aruze, and Baron agreed to contribute their interests in

5   Valvino to a new entity, which would be named Wynn Resorts, Limited ("Wynn Resorts").

6   18.   On April 11, 2002, Mr. Wynn, Aruze, and Baron executed a Stockholders

7   Agreement ("April 2002 Stockholders Agreement") with respect to their shares in the new entity.

8   19.   Mr. Wynn became Wynn Resorts' Chairman and Chief Executive Officer

9   in June 2002.

10   20.   In October 2002, Ms. Wynn became a director, Mr. Okada became Vice

11   Chairman, and Wynn Resorts conducted an initial public offering of its stock on the NASDAQ

12   exchange.

13   **B.   The April 2002 Stockholders Agreement**

14   21.   Section 2(a) of the April 2002 Stockholders Agreement set forth a voting

15   agreement between Mr. Wynn and Aruze.  Section 2(a) provided that Mr. Wynn would designate

16   a majority of all nominees to the board of directors of Wynn Resorts, while Aruze would

17   designate a minority slate of directors, and that Mr. Wynn and Aruze would vote the shares held

18   by them to elect the designated nominees.

19   22.   Section 9 of the April 2002 Stockholders Agreement set forth a right-of-

20   first-refusal restriction on the transfer of stock by Mr. Wynn, Aruze, and Baron.  Generally,

21   Section 9 provides that each contracting party who wishes to sell stock must, with certain

22   exceptions, provide notice of the proposed terms of sale to the other parties to the agreement, and

23   that each other party would have the right to purchase the offered shares according to certain

24   procedures.

25   23.   Section 4 of the April 2002 Stockholders Agreement states that "Shares

26   may not be transferred or sold by any Stockholder unless the transferee … both executes and

27   agrees to be bound by this Agreement …."

28   24.   On information and belief, the objective of the April 2002 Stockholders

- 35 -

1   Agreement was to secure and implement an alliance between Mr. Wynn and Mr. Okada to control

2   Wynn Resorts.  The April 2002 Stockholders Agreement was not intended to benefit Wynn

3   Resorts or its other shareholders.

4         25.     Because Mr. Wynn and Mr. Okada (through Aruze) were Wynn Resorts'

5   largest shareholders, by using the April 2002 Stockholders Agreement to maintain their positions,

6   they could effectively control Wynn Resorts.  On March 15, 2005, Wynn Resorts disclosed in its

7   Form 10-K filing that "Mr. Wynn and Aruze USA, Inc. each own approximately 25% of our

8   outstanding common stock.  As a result, Mr. Wynn and Aruze USA, Inc., to the extent they vote

9   their shares in a similar manner, effectively are able to control all matters requiring our

10  stockholders' approval, including the approval of significant corporate transactions."

11        26.     In the same Form 10-K, Wynn Resorts further disclosed:  "[i]n addition,

12  Mr. Wynn and Aruze USA, Inc, together with Baron Asset Fund, have entered into a

13  stockholders' agreement.  Under the stockholders' agreement, Mr. Wynn and Aruze USA, Inc.,

14  have agreed to vote their shares of our common stock for a slate of directors, a majority of which

15  will be designated by Mr. Wynn, of which at least two will be independent directors, and the

16  remaining members of which will be designated by Aruze USA, Inc.  As a result of this voting

17  agreement, Mr. Wynn, as a practical matter, controls the slate of directors to be elected to our

18  board of directors."

19        27.     Aruze's status as a substantial stockholder was a basic assumption upon

20  which the April 2002 Stockholders Agreement was based.

21      **C.**    **Mr. Wynn and Aruze Amend their Agreement**

22        28.     On information and belief, in 2006, in order to prevent Mr. Okada from

23  selling Aruze's Wynn Resorts stock, Mr. Wynn asked Mr. Okada to agree to further restrictions

24  on Mr. Okada's ability to sell Wynn Resorts stock.

25        29.     On November 8, 2006, Mr. Wynn and Mr. Okada executed an Amendment

26  to Stockholders Agreement ("2006 Amendment") between Mr. Wynn and Aruze.

27        30.     The 2006 Amendment stated: "This Amendment is intended to reflect the

28  spirit of friendship and cooperation that exists between Mr. Wynn and Mr. Kazuo Okada, who is

- 36 -

the primary representative of Aruze."

31.     On information and belief, Mr. Wynn stated around that time: "We want to make it clear we're one shareholder."

32.     The 2006 Amendment amended the April 2002 Stockholders Agreement to add the following: "*Mutual Restriction on Sale of Shares*.  Neither [Mr.] Wynn nor Aruze (nor any of their respective Permitted Transferees) shall Transfer, or permit any of their respective Affiliates to Transfer, any Shares Beneficially Owned by such Person without the prior written consent of both [Mr.] Wynn and Aruze."  This type of restriction on stock transfers is known as a consent restriction.

33.     The agreement is unclear whether the consent restriction applies to all sales, or whether certain sales may be made without consent but subject to the right of first refusal provision already in place.  On information and belief, Mr. Wynn contends that the consent restriction applies to all sales by the parties to the stockholders agreement.

34.     On information and belief, the 2006 Amendment was intended to further secure and implement the alliance between Mr. Wynn and Mr. Okada for control of Wynn Resorts.  The 2006 Amendment was not intended to benefit Wynn Resorts or its other shareholders.

35.     Again, Aruze's status as a substantial stockholder was a basic assumption upon which the 2006 Amendment was based.

**D.      Mr. Wynn Divorces Ms. Wynn**

36.     In March 2009, divorce proceedings began between Mr. Wynn and Ms. Wynn.  They had been married for 41 years.

37.     Under Nevada law, Ms. Wynn was entitled to an equal division of community assets, including the Wynn Resorts stock held in Mr. Wynn's name.

38.     During the divorce settlement negotiations, Mr. Wynn urged Ms. Wynn to enter into a stockholders agreement that would restrict her ability to sell or otherwise transfer the Wynn Resorts stock that would become her separate property.  Ms. Wynn, however, did not want her stock to be encumbered by transfer restrictions.  The issue was discussed extensively between

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1    Mr. Wynn and Ms. Wynn, and between their respective counsel.

2              39.     Mr. Wynn and his lawyers emphasized to Ms. Wynn that the purpose of the

3    new agreement was not to constrain Ms. Wynn herself, but to keep in place shares held by Mr.

4    Okada's company subject to the voting agreement.

5              40.     Mr. Wynn also emphasized that if Ms. Wynn were not subject to the

6    restrictions in the April 2002 Stockholders Agreement and the 2006 Amendment, Mr. Okada

7    would have an opening to renegotiate the existing restrictions.  Mr. Wynn did not want to allow

8    Mr. Okada to renegotiate the existing terms.

9              41.     Mr. Wynn argued that given his existing agreement with Mr. Okada's

10    company, he could not convey stock to Ms. Wynn free of restrictions.

11              42.     After discussing these issues with Mr. Wynn, Ms. Wynn decided that, in

12    order to support and maintain the existing agreement and alliance between Mr. Wynn and Mr.

13    Okada, she would agree to abide by the transfer restrictions of the existing agreement between

14    Mr. Wynn and Mr. Okada's company.

15    **E.      The January 2010 Stockholders Agreement**

16              43.     On January 6, 2010, Mr. Wynn, Ms. Wynn, and Mr. Okada's company

17    Aruze signed the Amended and Restated Stockholders Agreement ("January 2010 Stockholders

18    Agreement").

19              44.     Ms. Wynn's principal objectives in entering into the January 2010

20    Stockholders Agreement were to support and maintain the existing agreement and alliance

21    between Mr. Wynn and Mr. Okada.  On information and belief, this was also the purpose of the

22    other parties to the January 2010 Stockholders Agreement.

23              45.     Section 13 of the January 2010 Stockholders Agreement states:

24    "Notwithstanding any provisions to the contrary contained herein, no Stockholder or any of its

25    Affiliates shall be deemed to make any agreement or understanding herein in a capacity other

26    than that as stockholder of Wynn [Resorts]."

27              46.     Section 2(b) of the January 2010 Stockholders Agreement provides that,

28    with certain exceptions, "none of [Ms. Wynn], [Mr. Wynn] or Aruze (nor any of their respective

Permitted Transferees) shall Transfer, or permit any of their respective Affiliates to Transfer, any Shares Beneficially Owned by such Person without the prior written consent of each of the others." This provision essentially continued the consent restriction agreed to by Mr. Wynn and Mr. Okada's company in the 2006 Amendment. Like its predecessor, Section 2(b) was intended to maintain and support the existing alliance between Mr. Wynn and Okada.

47.     Section 9 of the January 2010 Stockholders Agreement is a right-of-first-refusal restriction on stock transfers. Generally, Section 9 provides that each contracting party who wishes to sell stock must, with certain exceptions, provide notice of the proposed terms of sale to the other parties to the agreement, and that each other party would have the right to purchase the offered shares according to a specified procedure.

48.     Section 5 of the January 2010 Stockholders Agreement states that "each Stockholder acknowledges that [Mr. Wynn] may instruct [Wynn Resorts] to not register (book-entry or otherwise) of any certificate or uncertificated interest representing any of such Stockholder's Shares that are transferred in violation of this Agreement."

49.     Section 4 of the January 2010 Stockholders Agreement states that "Shares may not be transferred or sold by the Designated Stockholder unless the transferee … both executes and agrees to be bound by" the agreement.

50.     The shareholder status of Mr. Okada's company, Aruze, was a fundamental premise of Ms. Wynn's decision to enter into the January 2010 Stockholders Agreement. Indeed, all parties to the January 2010 Stockholders Agreement entered into it solely in their capacities as stockholders. Ms. Wynn would not have agreed to give her ex-husband the potential ability to restrict the market for her stock if not for her desire to support and not undermine the existing alliance between Mr. Wynn and Mr. Okada.

51.     Aruze's participation in the January 2010 Stockholders Agreement was also a fundamental premise of Ms. Wynn's decision to enter into it. Ms. Wynn would not have entered into the agreement if Aruze had not been a party to it, or if Aruze had not been bound by it.

17743363.1

**F.     The Wynn Resorts Board Redeems Aruze's Stock**

52.     Wynn Resorts' Compliance Committee retained Louis Freeh, former Director of the Federal Bureau of Investigations, to investigate Mr. Okada's activities overseas, including his activities in the Philippines.

53.     On February 18, 2012, Mr. Freeh made a presentation to the Board of Wynn Resorts regarding Mr. Okada's activities overseas.

54.     Following Mr. Freeh's presentation, the Board of Wynn Resorts adopted a resolution finding Aruze, Mr. Okada, and Universal to be Unsuitable Persons under Wynn Resorts' Second Amended and Restated Articles of Incorporation ("Articles"), and redeemed Aruze's shares in Wynn Resorts in accordance with the provisions of the Articles.

**G.     Mr. Wynn Contends that Ms. Wynn Cannot Sell Stock Without His Consent**

55.     Following the redemption, Aruze is no longer a shareholder of Wynn Resorts.  Accordingly, the premise of and motivating reason for Ms. Wynn's agreement to the terms of the January 2010 Stockholders Agreement (and indeed of other parties' reasons to enter into its predecessor agreements) has disappeared.

56.     Nonetheless, Mr. Wynn continues to contend that Ms. Wynn's ability to sell her shares is still restricted by the terms of that agreement.   Among other things, he contends that Ms. Wynn may not sell her shares without his consent.

57.     Ms. Wynn's counsel has informed Mr. Wynn of her view that the January 2010 Stockholders Agreement is invalid.

**V.     Claims for Relief**

<u>**FIRST CAUSE OF ACTION**</u>

<u>**DECLARATORY RELIEF**</u>

**(Discharge and/or Rescission for Frustration of Purpose)**

58.     Ms. Wynn re-alleges the allegations set forth in paragraphs 1 to 57 above.

59.     An actual controversy exists among Ms. Wynn, Mr. Wynn, and Aruze with respect to the validity and/or enforceability of the January 2010 Stockholders Agreement.  The controversy is ripe for adjudication.

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

60.     The unforeseeable redemption of Aruze's stock has substantially frustrated the principal purpose of the January 2010 Stockholders Agreement as well as its predecessor agreements (*i.e.*, the April 2002 Stockholders Agreement and the 2006 Amendment).

61.     Ms. Wynn's principal purpose in entering into the January 2010 Stockholders Agreement was to support and avoid undermining the existing alliance and agreement between Mr. Wynn and Mr. Okada – an alliance and agreement that presupposed the substantial holding of Wynn Resorts stock by Mr. Okada's company, Aruze.  On information and belief, Mr. Wynn and Mr. Okada's company shared that same principal purpose in entering into the January 2010 Stockholders Agreement and its predecessor agreements.

62.     Following the redemption, Mr. Okada (through Aruze) no longer holds Wynn Resorts stock, and there is no longer an alliance or a need for an alliance between Mr. Okada's and Mr. Wynn's stockholdings.  Therefore, the principal purpose of the January 2010 Stockholders Agreement and its predecessor agreements has been substantially frustrated, and a basic assumption on which the contract was made has been fundamentally changed.

63.     For all of the foregoing reasons, performance by other parties of the January 2010 Stockholders Agreement has become valueless for Ms. Wynn.

64.     Ms. Wynn bore no fault for the events that gave rise to the unforeseeable redemption.  She did nothing in her capacity as a director or otherwise that was a but for cause of the redemption.  Nor did she take any action with respect to the redemption as a result of any purpose or desire to affect the obligations under any stockholders agreement; any actions she took in that regard resulted from the discharge of her fiduciary duties in the best interests of the corporation.

65.     Accordingly, Ms. Wynn seeks a declaration that all of Ms. Wynn's contractual duties under the January 2010 Agreement are discharged, or alternatively, that the January 2010 Stockholders Agreement is subject to rescission and is rescinded.

**SECOND CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(Unreasonable Restraint in Violation of Public Policy)**

66.     Ms. Wynn re-alleges the allegations set forth in paragraphs 1 to 57 above.

67.     An actual controversy exists among Ms. Wynn, Mr. Wynn, and Aruze with respect to the validity and/or enforceability of the January 2010 Stockholders Agreement.  The controversy is ripe for adjudication.

68.     The January 2010 Stockholders Agreement contains unreasonable and onerous restrictions on the alienability of Ms. Wynn's stock (the "Challenged Restrictions"), including:

(a)     Section (2)(b), which continued the consent restriction set forth in the 2006 Amendment; and

(b)     Section 4, which purports to require transferees of stock to be bound by provisions of the January 2010 Stockholders Agreement.

69.     To the extent they apply to sales of stock by Ms. Wynn above and beyond the requirements of a right of first refusal, the Challenged Restrictions are unenforceable:  they are without a reasonable purpose, and unduly interfere with the alienability of Ms. Wynn's shares.

(a)     The Challenged Restrictions were intended to maintain the controlling positions of Mr. Wynn and Mr. Okada's company.  They were not intended to benefit Wynn Resorts or its shareholders generally, and are not reasonably related to a legitimate corporate purpose.

(b)     Furthermore, the Challenged Restrictions lack a reasonable purpose after the redemption of Aruze's shares, because the continued ownership of those shares was a fundamental purpose for imposing the Challenged Restrictions.

70.     For these reasons, Ms. Wynn seeks a declaration that the Challenged Restrictions are unenforceable as an unreasonable restraint on alienation in violation of public policy, or that they should be construed as inapplicable to a sale by Ms. Wynn of shares as to which she offers a contractual right of first refusal to the parties to the agreement.

## **THIRD CAUSE OF ACTION**

## **DECLARATORY RELIEF**

### **(Discharge Or Rescission By Aruze)**

71.     Ms. Wynn re-alleges the allegations set forth in paragraphs 1 to 57 above.

72.     An actual controversy exists among Ms. Wynn, Mr. Wynn, and Aruze with respect to the validity and/or enforceability of the January 2010 Stockholders Agreement.  The controversy is ripe for adjudication.

73.     In this action, Aruze has filed claims against Mr. Wynn (Counts XVI and XVII of Aruze's First Amended Counterclaim) alleging breach of contract and seeking to be excused and completely discharged from any further performance of its obligations with respect to the January 2010 Stockholders Agreement.  In those claims, Aruze further seeks rescission of the January 2010 Stockholders Agreement.

74.     Ms. Wynn's principal purpose in entering into the January 2010 Stockholders Agreement was to support and avoid undermining the existing alliance and agreement between Mr. Wynn and Mr. Okada's company.  On information and belief, Mr. Wynn and Mr. Okada's company shared that same principal purpose in entering into the January 2010 Stockholders Agreement and its predecessor agreements.

75.     If Aruze successfully obtains a discharge of its obligations under the January 2010 Stockholders Agreement and is no longer bound thereby, then the purpose of that agreement would be substantially frustrated.  Ms. Wynn would not have entered into the agreement if Aruze was not bound by it.

76.     Accordingly, if Aruze successfully obtains a discharge of its obligations under the January 2010 Stockholders Agreement, Ms. Wynn seeks a declaration that all of her contractual duties under the January 2010 Stockholders Agreement are likewise discharged.

77.     Alternatively, if Aruze obtains a rescission of the January 2010 Stockholders Agreement, then the agreement would no longer have any legal effect.  In that event, Ms. Wynn seeks a declaration confirming that her contractual obligations under the 2010 Stockholders Agreement are completely discharged.

- 43 -

17743363.1

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

**FOURTH CAUSE OF ACTION**

**PERMANENT INJUNCTIVE RELIEF**

78.     Ms. Wynn re-alleges the allegations set forth in paragraphs 1 to 57 above.

79.     To enforce the judicial declarations Ms. Wynn seeks in paragraphs 58 to 77 and to secure her rights declared thereunder, Ms. Wynn further seeks an injunction that enjoins Mr. Wynn from instructing Wynn Resorts to not register shares sold or transferred by Ms. Wynn, as well as other injunctive relief against Mr. Wynn and/or Aruze the court deems necessary and appropriate to enforce the declaratory relief granted.

**DEMAND FOR JURY TRIAL**

Ms. Wynn hereby demands trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Wynn demands judgment against Mr. Wynn and Aruze as follows:

1.   A declaration that all of Ms. Wynn's contractual duties under the January 2010 Stockholders Agreement are discharged, or alternatively, that the January 2010 Stockholders Agreement is subject to rescission and is rescinded;

2.   A declaration that the Challenged Restrictions are unenforceable as an unreasonable restraint on alienation in violation of public policy or that they should be construed as inapplicable to a sale by Ms. Wynn of shares as to which she offers a contractual right of first refusal to the parties to the agreement;

3.   If Aruze successfully obtains a rescission of the January 2010 Stockholders Agreement or a discharge of Aruze's obligations thereunder, a declaration that all of Ms. Wynn's contractual duties under the January 2010 Stockholders Agreement are discharged and/or that the January 2010 Stockholders Agreement is subject to rescission and is rescinded;

4.   A preliminary and/or permanent injunction as the court deems necessary and appropriate to enforce the declarations prayed for, including an injunction that

ANSWER OF ELAINE WYNN, AND
COUNTERCLAIM AND CROSSCLAIM;
2:12-CV-00400-LRH-PAL

1      prohibits Mr. Wynn from instructing Wynn Resorts to not register shares sold or

2      transferred by Ms. Wynn;

3           5.   Costs of suit and such other relief as the court deems just and proper.

4

5   Dated:  June 19, 2012                    JOLLEY URGA WIRTH WOODBURY & STANDISH
                                             William R. Urga

6                                            MUNGER, TOLLES & OLSON LLP
                                             Ronald L. Olson
7                                            Mark B. Helm
                                             Jeffrey Y. Wu
8

9

10                                          By: /s/ William R. Urga_____

11                                          Attorneys for Defendant, Counter- and Cross-
                                            claimant ELAINE WYNN
12

13

14                       CERTIFICATE OF SERVICE

15          Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee

16   of Jolley Urga Wirth Woodbury & Standish and that on the 19th day of June, 2012, I  caused the

17   document entitled ANSWER OF ELAINE P. WYNN TO ARUZE AND UNIVERSAL'S FIRST

18   AMENDED  COUNTERCLAIM;  COUNTERCLAIM  AND  CROSS-CLAIM  OF  ELAINE  P.

19   WYNN to be served on the parties in this action via the Court's CM/ECF system.

20

21                                   By:   /s/ Linda Schone_____
                                          An Employee of JOLLEY URGA  WIRTH
22                                             WOODBURY & STANDISH

23

24

25

26

27

28

17743363.1                    - 45 -       ANSWER OF ELAINE WYNN, AND
                                           COUNTERCLAIM AND CROSSCLAIM;
                                           2:12-CV-00400-LRH-PAL